2013 CO 48

**The PEOPLE of the State of Colorado, Petitioner**

v.

**James Henry HUNTER, Respondent.**

**Supreme Court Case No. 10SC146**

Supreme Court of Colorado, En Banc.

July 1, 2013

Attorneys for Petitioner: John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado

Attorneys for Respondent: Douglas K. Wilson, Public Defender, Joan E. Mounteer, Deputy Public Defender, Denver, Colorado

Justice RICE delivered the Opinion of the Court.

¶ 1 This case involves Respondent James Henry Hunter's designation as a sexually violent predator ("SVP") and requires we interpret the word "stranger" in the relationship criterion of the SVP statute. § 18–3–414.5(1)(a)(III), C.R.S. (2012). We hold that "stranger" in this statute means either the

victim is not known by the offender or the offender is not known by the victim at the time of the offense.

¶ 2 After applying our interpretation of the word "stranger" in the relationship criterion of the SVP statute to the record in this case, we hold that the court of appeals erred when it reversed the trial court's ruling designating Hunter as an SVP. We therefore reverse the judgment of the court of appeals.

## I. Facts and Procedural History

¶ 3 A jury convicted Hunter of second-degree burglary, sexual assault, sexual assault on a child, and a crime of violence. The evidence at trial showed that Hunter—who was wearing a mask during the assault and was otherwise unidentifiable by the victims—broke into his neighbor's home and sexually assaulted her and her five-year-old daughter. The trial court designated Hunter as an SVP under section 18–3–414.5(1)(a). Hunter appealed and the court of appeals affirmed his conviction, but reversed the trial court's SVP designation. *People v. Hunter*, No. 04CA699, slip op. at 15, 2007 WL 611882 (Colo.App. Mar. 1, 2007) (not selected for official publication) *(Hunter I)*. The court of appeals remanded the case to allow the trial court to make specific findings as to whether either victim was a stranger to Hunter or whether he had established or promoted a relationship with either victim primarily for the purpose of sexual victimization, as required under the "relationship" criterion of the SVP statute, section 18–3–414.5(1)(a)(III). *Hunter I*, slip op. at 14–15.

¶ 4 On remand, Hunter argued that he was not a stranger to the victims. The trial court disagreed and designated Hunter as an SVP. The trial court found that Hunter's victims were strangers as neither knew Hunter during the assault.

¶ 5 Hunter appealed and the court of appeals reversed the trial court's SVP designation. *See People v. Hunter*, 240 P.3d 424, 426 (Colo.App.2009) (selected for official publication) *(Hunter II)*. It held that "nothing in the statute indicates that the [relationship] criterion is met when the victim knows the offender, but is unable to identify him, as was the case here." *Id.* Judge Casebolt dissented and opined that the "majority's interpretation yields an anomalous, if not absurd, result"; he posited that the better interpretation "requires that we read 'stranger to the offender' as meaning either the victim is a stranger to the offender or the offender is a stranger to the victim, when analyzed at the time the offense was committed." *Id.* at 427–28 (Casebolt, J., dissenting). Judge Casebolt reasoned—based on the purpose of the SVP designation—that "[t]he danger to the public that the perpetrator may reoffend exists in both settings, and [his] interpretation [therefore] gives effect to the entire statute." *Id.* at 428 (Casebolt, J., dissenting).

¶ 6 We granted certiorari to determine whether the court of appeals erred in holding that Hunter's victims were not strangers based on the circumstances of this case.[1] We reverse the judgment of the court of appeals and hold that Hunter met the relationship criterion of the SVP statute because his victims were "strangers" at the time of the offense.

## II. Analysis

### A. "Stranger"

¶ 7 The trial court ultimately determines whether an offender satisfies the four criteria of section 18–3–414.5(1)(a) and therefore qualifies for SVP designation. *Allen v. People*, 2013 CO 44, ¶ 1, 307 P.3d 1102, 2013

---

1. Specifically, we granted certiorari on two issues:
   1. Whether the court of appeals erred in its conclusion that, under section 18–3–414.5(1)(a), C.R.S. (2009), the victims and the defendant were not "strangers" based on the circumstances of this case.
      2. Whether the court of appeals should have made sexually violent predator findings on the alternate grounds that the defendant "established or promoted a relationship" with the victim primarily for the purpose of sexual victimization. Alternatively, whether the appropriate remedy is to remand the case to the trial court for further findings.

Because of our resolution of the first issue, we need not reach the alternative grounds posited by Hunter. Moreover, our interpretation of the "stranger" criterion does not require we remand this proceeding to the trial court.

WL 3323904 (released concurrently). In this case, we interpret the term "stranger" in the relationship criterion of the SVP statute to determine whether the court of appeals erred in designating Hunter as an SVP. We defer to the trial court's factual determinations, but review de novo whether the trial court's factual findings support an SVP designation. *See People v. Tixier*, 207 P.3d 844, 849 (Colo. App.2008).

¶ 8 Under the relationship criterion of the SVP statute, an offender is an SVP if the "victim was a *stranger* to the offender." § 18–3–414.5(1)(a)(III) (emphasis added). Accordingly, we must determine the meaning of "stranger" in the SVP statute.

¶ 9 "In any statutory interpretation, our task is to determine and give effect to the intent of the General Assembly." *Welby Gardens v. Adams Cnty. Bd. of Equalization*, 71 P.3d 992, 995 (Colo.2003) (citation omitted). We typically "afford the words of the statute their ordinary and common meaning and construe the statutory provisions as a whole, giving effect to the entirety of the statute." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570 (Colo.2008).

¶ 10 Because the word "stranger" is not ambiguous, we begin and end our analysis by considering the term's plain meaning. In common parlance a stranger is an individual who is "a person not known or familiar to one." *Webster's New College Dictionary* 1415 (2005). Similarly, Black's Law Dictionary defines the word stranger as "[o]ne not standing toward another in some relation implied in the context." *Black's Law Dictionary* 1556 (9th ed. 2004). Given the importance of the context of any given interaction to the definition of "stranger," we agree with Judge Casebolt's dissent and understand "stranger" to mean the relationship criterion is satisfied where either the victim is not known by the offender or the offender is not

known by the victim, at the time of the offense. Moreover, defining "stranger" by considering the context of the parties' relationship at the time of the offense is consistent with the community safety and notice purpose of the SVP designation because it ensures a proper designation for offenders likely to reoffend in both situations: where the victim is not known by the offender or the offender is not known by the victim. *See People v. Tuffo*, 209 P.3d 1226, 1230 (Colo. App.2009) (noting that "the registration and notification requirements established in the SVP statute are intended to protect the community"); *see also Allen*, ¶ 7 (noting that the SVP designation's stated purpose is to protect the community (citation omitted)).

¶ 11 Similarly, the Sex Offense Management Board's ("SOMB's") risk assessment screening instrument (the "Screening Instrument")[2] defines "stranger" by considering the context of the victim and offender's relationship at the time of the assault. Specifically, the Screening Instrument notes, "the victim is a stranger to the offender when [the victim has] . . . little or no familiar or personal knowledge of said offender." SOMB Handbook: Sexually Violent Predator Assessment Screening Instrument (SVPASI) Background and Instructions 68 (August 2010) http://dcj. state.co.us/odvsom/sex_offender/SO_Pdfs/ SVPASI%20HANDBOOK%202010.pdf. Accordingly, our interpretation of "stranger" is consistent with the Screening Instrument's definition because, like the Screening Instrument, we determine that a "stranger" includes the situation where the offender is not known by the victim at the time of the offense.

¶ 12 We hold that "stranger" in the relationship criterion of the SVP statute means either the victim is not known to the offender or the offender is not known to the victim, at the time of the offense.[3] We now apply our

---

2. Because the SOMB is not tasked with promulgating a definition of stranger we need not defer to the Screening Instrument's definition of "stranger." *See Allen*, ¶ 9. Nonetheless, in this instance, because of the SOMB's familiarity with the SVP designation, we find its definition in the Screening Instrument persuasive. *See Sullivan v. Indus. Claim Appeals Office*, 22 P.3d 535, 538 (Colo.App.2000) ("A court may also look outside

the statute to related sources for the definition of an applicable term.").

3. Notably, our definition conflicts with dicta from a division of the court of appeals addressing the meaning of "stranger" in the SVP statute. *See Tixier*, 207 P.3d at 847. That division suggested "stranger" meant a victim "with whom the offender has no definable relationship." *Id.*

interpretation of "stranger" in the relationship criterion of the SVP statute to the facts of this case.

## B. Application

¶ 13 The court of appeals erred when it reversed the trial court's decision designating Hunter as an SVP. Record evidence supports the trial court's finding that Hunter was a stranger to both victims at the time of the assault. Considering the mother's perspective first, she testified that her only meaningful interaction with Hunter occurred six months prior to the sexual assault when she joined Hunter and his wife for dinner. Besides the mother's limited interaction with Hunter, the sexual assault occurred in the mother's trailer, during the dead of night, and while the mother was "half-asleep." And, immediately upon entering her trailer, Hunter struck the mother in her lip and then "bashed her in the eye," further disorienting his victim. The mother also testified that Hunter obscured her vision during the assault by placing a blanket over her head at various intervals.

¶ 14 Moreover, during the assault Hunter often asked about "Carl." The mother did not know any man named Carl. Hunter also expressed frustration about the lack of cash in the trailer because he claimed the mother "worked in a bank," which she did not. These confusing statements likely undermined the mother's ability to identify her assailant. Though the mother testified at trial that she might have recognized Hunter's voice during the assault, on cross-examination Hunter's counsel introduced evidence of an earlier interview where the victim admitted "there was something about his voice that just really didn't sound like [Hunter]."

¶ 15 Additionally, the trial court found that Hunter—who was wearing a mask during the assault—"was not known to [the victims,] so he was there as a stranger when the assault started and throughout the assault." The trial court also observed that Hunter's identi-

fication in this case was based on DNA evidence because neither victim affirmatively identified Hunter as the perpetrator. Deferring to the trial court's factual findings, we agree that, in the *context* of the assault, Hunter was a stranger to the mother.

¶ 16 The facts in the record supporting the trial court's finding that Hunter was a stranger to the mother also support the trial court's finding that Hunter was a stranger to the daughter. In addition to the facts described above, the daughter was only five years old at the time of the assault, and had previously interacted with Hunter less than her mother. The daughter also never indicated that she recognized Hunter's voice during the assault. Moreover, at the start of the assault, Hunter forced alcohol down the daughter's throat and, as a result, she was likely unconscious during most of the assault. Given her age, limited previous interaction with Hunter, and drugged state, the *context* of this crime supports the trial court's determination that Hunter was a stranger to the daughter at the time of the assault.

¶ 17 In sum, neither victim knew Hunter was the person committing the assault. Thus, Hunter's victims were strangers at the time of the assault and he therefore meets the relationship criterion of the SVP designation. We reverse the court of appeals and reinstate the trial court's designation of Hunter as an SVP.

## III. Conclusion

¶ 18 We hold that the term "stranger" in the relationship criterion of the SVP statute is satisfied where the victim does not know the offender or the offender does not know the victim at the time of the offense. In light of our interpretation of the word "stranger" in the relationship criterion, we also hold that the court of appeals erred when it reversed the trial court's decision to designate Hunter as an SVP. We therefore reverse the court of appeals' judgment and reinstate the trial court's SVP designation.

---

The *Tixier* court's definition of stranger fails to give proper effect to the SVP designation because it does not consider the importance of context to the plain meaning of "stranger." *Id.* Rather, it considers the term "stranger" more generally.

Its interpretation, moreover, is deficient as it fails to recognize the community notice purpose of the statute: protecting individuals from offenders who commit crimes against strangers.

Justice COATS concurs in the judgment.

Justice MÁRQUEZ dissents, and Justice BOATRIGHT joins in the dissent.

Justice COATS, concurring in the judgment.

¶ 19 Although I have indicated in my separate opinion in Allen v. People, 2013 CO 44, 307 P.3d 1102, my disagreement with the majority's interpretation of the term "stranger," as that term is used in section 18–3–414.5(1)(a)(III), C.R.S. (2012), I would nevertheless find the sentencing court's conclusion that the assaults in this case were committed by a stranger to be supported by the record. Because I believe the statute's reference to "stranger" is best understood to include any sexual assault not facilitated or made possible by the offender's relationship with the victim, I would consider the requirements of subparagraph (III) satisfied by any break-in and forcible sexual assault, whether the victim could identify her assailant as someone with whom she was acquainted or not.

¶ 20 I therefore concur in the judgment of the court.

Justice MÁRQUEZ, dissenting.

¶ 21 I respectfully dissent. The majority concludes in this case that the "context" of the interaction between an offender and victim during an assault is not only relevant, but dispositive to determining whether the offender was a "stranger" for purposes of designating the offender a sexually violent predator ("SVP"). I disagree. The term "stranger" in section 18–3–414.5(1)(a)(III), C.R.S. (2012), looks strictly to the existing relationship (or lack thereof) between the offender and victim. Importantly, the nature of this relationship does not vary with a victim's ability to identify the offender during an assault. In my view, the majority's context-driven approach misconstrues the purpose of the relationship criterion of the SVP designation under section 18–3–414.5(1)(a)(III) and leads to absurd results.

I.

¶ 22 As I note in my concurrence in Allen v. People, the relationship criterion of the SVP designation focuses on the "predatory" nature of the offense. Allen v. People, 2013 CO 44, ¶ 30, 307 P.3d 1102 (Márquez, J., concurring in the judgment). Given that the SVP designation seeks to identify that subset of high risk predators who warrant community notification, see § 16–13–901, C.R.S. (2012), the relationship criterion in section 18–3–414.5(1)(a)(III) looks to the pool of victims targeted by sexually violent offenders. The criteria in section 18–3–414.5(1)(a)(III) represent a legislative judgment that an offender poses a higher risk to the broader community where the offender targets "stranger[s]" or seeks to "establish[ ] or promote[ ] a relationship" with individuals "primarily for the purpose of sexual victimization." The general assembly has concluded that the risk posed by such a predatory offender (that is, an offender who demonstrates a propensity to target a broader pool of potential victims) justifies alerting the greater community to the presence of that offender. Thus, the focal point of the relationship criterion is the type of victim targeted; accordingly, section 18–3–414.5(1)(a)(III) is concerned with the existing relationship (or lack thereof) between the offender and the victim. Importantly, the egregiousness of the offender's conduct during the commission of the sexual assault (although highly relevant to sentencing) has no bearing on this particular aspect of the SVP designation.

¶ 23 A "stranger" is "a person not known or familiar to one," maj. op. ¶ 10, or "a person or thing that is unknown or with whom one is unacquainted," Webster's Third New International Dictionary 2256 (2002). Thus, a person is a "stranger" if one lacks a general familiarity or acquaintance with that person. Importantly, whether a person is a "stranger" does not depend on the circumstances of a particular interaction; rather, the term reflects the general lack of a relationship between two people. An existing relationship is not altered simply because a person's perception is impaired in some way during an encounter. In other words, a person's temporary inability to recognize a friend or relative under certain circumstances (because it is dark, or the person's vision is obscured, for example) does not render that friend or relative a "stranger."

## II.

¶ 24 The majority holds that "stranger" in the relationship criterion of the SVP statute means "either the victim is not known to the offender or the offender is not known to the victim." Maj. op. ¶ 12. I have no quarrel with this narrow definition per se; it is consistent with my view that section 18–3–414.5(1)(a)(III) is focused on the existing relationship between the offender and the victim. My disagreement stems from the majority's application of this definition in this case–in particular, the majority's reliance on the circumstances of the assault to conclude that a "stranger" relationship existed between the offender and his victims; specifically, circumstances that impaired the victims' ability to identify their attacker. For example, the majority emphasizes that the assault occurred in the "dead of night," while the mother was "half-asleep"; that Hunter further disoriented the mother and "obscured her vision" by placing a blanket over her head and making "confusing statements"; and that he "was wearing a mask," and forced alcohol down the daughter's throat such that she was "likely unconscious" during most of the assault. Maj. op. ¶¶ 13–16. These circumstances unquestionably depict the terror Hunter caused his victims during this horrific assault. And, to the extent that the circumstances of an assault are evidence of whether the offender and victim had an existing relationship, they may be relevant.[4] However, to the extent such circumstances merely reflect the victim's inability to identify an otherwise known assailant, they are irrelevant to the determination of the relationship criterion in section 18–3–414.5(1)(a)(III).

¶ 25 An offender who hinders his victim's efforts to identify him is not necessarily the equivalent of an offender who targets actual strangers or seeks to establish or promote a relationship primarily for the purpose of sexual victimization. The SVP designation contemplates only the latter category of high risk offenders. For example, a jealous ex-boyfriend might attack his former girlfriend in the dark or blindfold her during an assault to avoid being identified. Or, an uncle might drug his niece before sexually assaulting her so that she is too disoriented to resist or recognize her attacker. In these scenarios, the offender has targeted a victim with whom he has a known relationship—indeed, a victim within his family or circle of known friends. But under the majority's approach, the victim's inability to identify the offender during the assault becomes dispositive—rendering these hypothetical victims "strangers" for purposes of the relationship criterion of the SVP designation. In my view, this approach leads to absurd results and contravenes clear legislative intent to designate as sexually violent predators only those offenders who present a sufficiently high risk to the broader community to warrant affirmative notification. Finally, as I noted in my concurrence in *Allen*, the majority's reliance on circumstances suggesting that Hunter conducted his attack to avoid being identified illustrates my concern that courts "may be tempted to allow the horrific circumstances of a particular crime (appropriately considered for purposes of sentencing) to influence their determination of the separate, statutory SVP designation." *Allen*, ¶ 38 (Márquez, J., concurring in the judgment).

¶ 26 I agree with the court of appeals' conclusion that the trial court applied the wrong legal standard to determine whether Allen qualified as an SVP; however, I would remand the case for further proceedings to determine whether Hunter and the victims were "strangers" within the meaning of section 18–3–414.5(1)(a)(III). Regardless, I cannot join the majority in reversing the court of appeals and affirming the trial court's order. Therefore, I respectfully dissent.

I am authorized to state that Justice BOATRIGHT joins in this dissent.

---

4. Indeed, the court of appeals noted that the prosecution argued in closing that Hunter wore a mask during the assault precisely because the victims knew him. *People v. Hunter*, 240 P.3d 424, 426 (Colo.App.2009).