2014 CO 21

The PEOPLE of the State of Colorado, Petitioner

v.

Robert SANDOVAL–CANDELARIA, Respondent.

Supreme Court Case No. 11SC715

Supreme Court of Colorado.

March 24, 2014

Rehearing Denied April 14, 2014

Attorneys for Petitioner: John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado.

Attorneys for Respondent: Douglas K. Wilson, Public Defender, Ned R. Jaeckle, Deputy Public Defender, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶1 We granted certiorari to consider whether a six-month and seven-day sentencing delay was "unreasonable" under Crim. P. 32(b) and unconstitutional under the speedy trial clauses of the United States and Colorado Constitutions.

¶2 Following the defendant's conviction for manslaughter, the trial court delayed sentencing to await the resolution of an unrelated felony charge. The defendant pleaded guilty to that unrelated felony, and the manslaughter case proceeded to sentencing. At the rescheduled sentencing hearing, the trial court found that the defendant's conviction for the unrelated felony triggered sentencing within an aggravated range. It then sentenced the defendant to twice the maximum presumptive sentence—or twelve years in prison—for manslaughter.

¶3 A division of the court of appeals held that the sentencing delay was "unreasonable" under Crim. P. 32(b). The majority also held that the delay violated the defendant's constitutional right to speedy sentencing.[1]

¶4 We reverse the court of appeals. We hold that the six-month and seven-day sentencing delay was not "unreasonable" under Crim. P. 32(b) because the trial court imposed the delay for a legally justifiable reason, namely, to further the General Assembly's intent to require trial courts to sentence recidivist offenders, like the defendant, within an aggravated range. We reject the defendant's constitutional claim because the sentencing delay was not presumptively prejudicial.

---

1. See *People v. Sandoval–Candelaria,* —— P.3d ——, 2011 WL 2186433 (Colo.App. No. 07CA759, Sept. 1, 2011).

## I. Background

¶ 5 The defendant, Robert Sandoval-Candelaria, was charged with first degree murder but convicted of manslaughter for killing his common law wife.

¶ 6 At sentencing, the prosecution requested six years in prison, the maximum sentence for manslaughter. The trial court asked whether it could impose a longer sentence based on the presence of what it perceived as a sentence-enhancing circumstance: the defendant had been out on bond for an unrelated felony when he killed his wife. Because the defendant had not yet been convicted in the "on-bond" case, both parties correctly observed that this would have been premature.

¶ 7 The trial court then suggested delaying sentencing until the disposition of the on-bond case. The defendant raised a "strenuous objection," in part because he inferred that the sole purpose of the delay was "to allow the court to impose up to 12 years." Over this objection, the trial court postponed sentencing until the on-bond case was resolved, reasoning that "being on bond when you commit a felony is an aggravating circumstance." Later, the defendant pleaded guilty in the on-bond case.

¶ 8 The manslaughter case proceeded to sentencing, six months and seven days after the trial court rescheduled the original sentencing hearing. The trial court expressed its view that "it [had] seemed wrong" to be limited to six years and "that the coincidence of timing"—that is, the fact that the on-bond case "trailed" the defendant's murder trial—should not limit its freedom to impose a sentence within an aggravated range. The trial court then imposed the maximum sentence it could: 12 years.

¶ 9 The court of appeals concluded that the sentencing delay was "unreasonable" under Crim. P. 32(b) because it was not legally justifiable. It reasoned that the trial court

could not delay sentencing to have available the option of a longer sentence "than was lawfully possible" on the originally scheduled sentencing date. The majority also found the delay unconstitutional.

¶ 10 The People sought certiorari review of the court of appeals' opinion, raising two issues: (1) whether the delay was "unreasonable" under Crim. P. 32(b); and (2) whether the delay violated the defendant's right to speedy sentencing under the speedy trial clauses of the United States and Colorado Constitutions. We granted certiorari to resolve these issues.[2]

## II. Standard of Review

¶ 11 We must interpret Crim. P. 32(b) to determine whether the sentencing delay imposed here was "unreasonable." We also assess whether the delay violated the defendant's right to speedy sentencing under the speedy trial clauses of the United States and Colorado Constitutions. Both tasks raise questions of law that we review de novo. *See People v. Angel*, 2012 CO 34, ¶ 13, 277 P.3d 231, 234 (interpreting a rule of criminal procedure de novo); *Moody v. Corsentino*, 843 P.2d 1355, 1363–67 (Colo.1993) (implicitly reviewing a speedy sentencing claim de novo).

## III. Analysis

¶ 12 We begin with Crim. P. 32(b) and our interpretation of that rule in *Gallagher v. District Court*, 632 P.2d 1009 (Colo.1981). Relying on *Gallagher*, we examine the reason for the sentencing delay, find that the trial court imposed it to further the General Assembly's intent, and conclude that the reason was legally justifiable. Because the sentencing delay was legally justifiable and thus reasonable, we turn to the defendant's contention that the delay violated what he asserts is his constitutional right to speedy sentencing. After discussing the nature of that alleged right, we conclude that the sen-

---

2. We granted certiorari on two issues:

1. Whether a trial court can properly delay sentencing in a felony case until a separate on-bond case involving the defendant is resolved without violating Crim. P. 32(b), the defendant's right to sentencing without unreasonable delay.

2. Whether delaying sentencing for six months until a separate case involving the defendant is resolved constitutes a violation of the defendant's constitutional right to a speedy trial.

tencing delay was not presumptively prejudicial and that further inquiry into the defendant's constitutional claim is unwarranted.

### A. The Delay Was Not "Unreasonable" Under Crim. P. 32(b)

¶ 13 Crim. P. 32(b) requires trial courts to sentence defendants "without unreasonable delay."[3] In *Gallagher*, we interpreted this provision to prohibit sentencing delays imposed for "no legally justifiable reason." 632 P.2d at 1012. To understand that phrase, we examine *Gallagher*.

¶ 14 The defendant in *Gallagher* was charged with third degree burglary, a felony, and theft, a misdemeanor, for stealing coins from a vending machine. *Id.* at 1010. He had five prior felony convictions and thus was ineligible for probation under the two-prior-felony statute, which requires trial courts to sentence offenders with two or more prior felony convictions to prison. *Id.* at 1010–11.

¶ 15 To avoid prison, the defendant devised an "imaginative" plan to serve his sentence in county jail. *Id.* at 1010. First, he would agree to plead guilty to a more serious charge of theft, which carried a maximum twelve-month sentence, and then he would ask to serve that twelve-month sentence in county jail with work release. *Id.* Second, he would request that the trial court delay sentencing on the burglary conviction until after he served the twelve-month county jail sentence. *Id.* The trial court would then sentence him to twelve months' time served. *Id.* "As a result, [defendant] would serve no imprisonment time in the custody of the department of corrections." *Id.* The trial court adopted the defendant's plan. *Id.* at 1011.

¶ 16 This court examined the legality of that imaginative sentence. *Id.* Recognizing that it was designed "to promote the defendant's rehabilitation," we still found the sentence "legally impermissible" because it was structured to avoid the two-prior-felony statute. *Id.* We reasoned that the General Assembly had made clear that offenders with

two or more prior felony convictions, like the defendant in *Gallagher*, must be sentenced to prison, not county jail. *Id.* In other words, "the sentence must be consistent with legislatively imposed limits and constraints." *Id.* And we stressed that a "court is not free to disregard these legislative mandates" even if it considers them inappropriate in a particular case. *Id.*

¶ 17 We then turned to Crim. P. 32(b)'s requirement that sentencing must occur "without unreasonable delay." *Id.* Because "the only reason for delaying the sentence for the felony conviction is to prevent the defendant from serving any imprisonment time," we concluded that the sentence "impermissibly circumvents" the two-prior-felony statute. *Id.* We thus found the one-year delay "unreasonable" under Crim. P. 32(b) because there was no "legally justifiable" reason for it. *Id.* at 1012.

¶ 18 The defendant argues that this case is the "mirror image" of *Gallagher*. In his view, *Gallagher* concerned a trial court's attempt to circumvent the two-prior-felony statute to impose a more lenient sentence, whereas the trial court here attempted to circumvent the statutory sentencing range for manslaughter to impose a longer sentence. The trial court's objective, he claims, is thus the only distinction—a distinction without a difference.

¶ 19 The People disagree. Rather than attempting to circumvent a legislative directive, they argue that the trial court was attempting to further the directive found in section 18-1.3-401(9), C.R.S. (2013), which requires trial courts to sentence a defendant to at least the minimum—and at most twice the maximum—sentence if it finds certain "sentence-enhancing circumstances."

¶ 20 The sentence-enhancing circumstance pertinent here is present when the defendant commits a felony while "on bond for a felony in a previous case and the defendant was

---

**3.** Crim. P. 32(b)(1) provides:
Sentence shall be imposed without unreasonable delay. Before imposing sentence, the court shall afford the defendant an opportunity to make a statement in his or her own behalf,
and to present any information in mitigation of punishment. The state also shall be given an opportunity to be heard on any matter material to the imposition of sentence. Alternatives in sentencing shall be as provided by law.

convicted of any felony in the previous case." § 18–1.3–401(9)(a).

¶ 21 The court of appeals interpreted this provision to require a felony conviction in the previous case at the time when the sentencing hearing was originally scheduled. It reasoned that the phrase "was convicted of any felony" requires a defendant to have "already been convicted in a previous case when the enhanced sentence is imposed in the present case."

¶ 22 But the defendant had "already been convicted" in the on-bond case when the enhanced twelve-year sentence was imposed. Of course, this is because the trial court delayed sentencing to have available the option of that enhanced sentence. Still, this observation illustrates that the court of appeals' interpretation depends on a highly variable temporal relationship between the date of conviction and the date on which the sentencing hearing was originally scheduled. Under its construction, whether a defendant is subject to section 18–1.3–401(9)(a) necessarily depends on a trial court's discretionary decision of when to schedule a sentencing hearing—a decision fraught with myriad and shifting considerations, many of which are driven by the court's docket. We reject the notion that the legislative intent behind section 18–1.3–401(9)(a) can turn on these fluid circumstances.

¶ 23 Rather, "to determine and give effect to the intent of the General Assembly," we afford words their common and ordinary meanings, construe the statutory provision as a whole, and attempt to give harmonious effect to all its parts. *People v. Hunter,* 2013 CO 48, ¶ 9, 307 P.3d 1083, 1086. We presume that the General Assembly intends a just and reasonable result when it enacts a statute. § 2–4–201(1)(c), C.R.S. (2013).

¶ 24 A "sentence-enhancing circumstance" is present when, "[a]t the time of the commission of the felony," a defendant "was charged with or was on bond for a felony in a previous case." § 18–1.3–401(9)(a). Given the plain language of this provision, someone like the defendant, who was "on bond for a felony in a previous case" when he killed his wife, falls under section 18–1.3–401(9)(a).

The additional question of whether a trial court can use that circumstance for sentence enhancement depends on whether "the defendant was convicted of any felony in the previous case." *Id.* A trial court's decision to delay sentencing to determine whether a defendant is ultimately convicted, and thus eligible for sentence enhancement, furthers the General Assembly's intent to punish on-bond offenders more severely because of a propensity to recidivate even when circumscribed by bond conditions.

¶ 25 This interpretation makes sense because the applicability of section 18–1.3–401(9)(a) should not hinge on the discretion inherent in the trial court's decision of when to schedule a sentencing hearing. If it did, then the General Assembly's intent would be furthered in some cases but thwarted in others—all because of a scheduling decision. To use the trial court's words, the "coincidence of timing" would then dictate the applicability of section 18–1.3–401(9)(a). A discretionary scheduling decision should not dictate its applicability; the offender's status as an on-bond recidivist should.

¶ 26 The defendant warns against the consequences of this interpretation. He argues that the prosecution will attempt to delay sentencing to manipulate court dockets and further sentence enhancement. Yet the defendant's own construction raises a parallel concern. Defendants could also attempt to manipulate court dockets to avoid sentence enhancement. This illustrates why the applicability of section 18–1.3–401(9)(a) should not hinge on the originally scheduled sentencing date. It would lead to arbitrary results. Trial courts are in the best position to determine whether gamesmanship is motivating either side. Indeed, our cases make clear that trial courts have broad discretion to manage their dockets. *See, e.g., People v. Wells,* 776 P.2d 386, 389 (Colo.1989) (noting that the decision to grant or deny a continuance is within the "sound discretion" of a trial court).

¶ 27 Here, the trial court delayed sentencing for six months and seven days to await the disposition of the defendant's on-bond case. The trial court's decision to delay sentencing was not an attempt to "impermissibly

circumvent" the sentencing statutes, as it was in *Gallagher*. It was an attempt to further the intent behind them. The General Assembly has made clear that trial courts must sentence recidivist offenders, like the defendant, within aggravated sentencing ranges. The trial court's decision to delay sentencing to determine whether the defendant was eligible for sentence enhancement was legally justifiable because it furthered the General Assembly's intent. And the six-month and seven-day delay to achieve that purpose was not unreasonably lengthy. We thus conclude that the sentencing delay was not "unreasonable" under Crim. P. 32(b).

### B. The Delay Was Not Presumptively Prejudicial

¶ 28 Next, the defendant contends that the sentencing delay violated his claimed constitutional right to speedy sentencing.[4]

¶ 29 We first address the right to speedy sentencing and then analyze whether the delay was presumptively prejudicial—that is, sufficiently lengthy to trigger further inquiry into the defendant's constitutional claim. Without embracing the defendant's assertion that there is a right to speedy sentencing, we conclude that the sentencing delay was not presumptively prejudicial.

### 1. The Right to Speedy Sentencing

¶ 30 The United States and Colorado Constitutions guarantee all criminal defendants the right to a speedy trial. U.S. Const. amend. VI; Colo. Const. art. II, § 16.

¶ 31 The Supreme Court has assumed but never decided that the right to a speedy trial extends through sentencing. *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). Since *Pollard*, most circuits addressing a speedy sentencing

question have adopted the same approach—that is, they assume the existence of the right before denying the claim on the merits. *See United States v. Ray*, 578 F.3d 184, 192 (2d Cir.2009) (listing cases).

¶ 32 Like those courts, we also have assumed that the right to speedy sentencing exists. *See Moody*, 843 P.2d at 1363. In *Moody*, a plurality of this court noted that "all other circuits that have addressed this issue 'have either treated the subject as established law or have perpetuated the Court's assumption.' " *Id.* (quoting *Perez v. Sullivan*, 793 F.2d 249, 253 (10th Cir.1986)). For that reason, the plurality then evaluated and rejected the defendant's claim on the merits.[5] *Id.* at 1363, 1367.

¶ 33 Here, the parties do not question the propriety of the assumption made in *Moody*, nor do they ask us to revisit it. For that reason, we continue to assume, without deciding, that the right to a speedy trial extends through sentencing.

### 2. Presumptive Prejudice

¶ 34 We evaluate speedy trial claims using an ad hoc balancing test outlined in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). To assess an alleged violation of the right to speedy sentencing, we consider four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted the right to speedy sentencing; and (4) the prejudice to the defendant. *See Moody*, 843 P.2d at 1363 (citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182).

¶ 35 The first of these is a double inquiry. *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Simply to trigger a speedy sentenc-

---

4. The People argue that the defendant waived this argument. Although he objected to the sentencing delay, the People contend that the defendant did not object on constitutional grounds and that his failure to do so constitutes a "waiver" that precludes appellate review. They also fault the court of appeals for addressing the defendant's constitutional claim given our "longstanding rule that the failure to raise a constitutional speedy trial claim below constitutes a waiver." But the People did not make this argument to the court of appeals, nor did they bring this so-called

"longstanding rule" to its attention. Because the court of appeals addressed the defendant's constitutional claim, we do so here as well.

5. Since *Moody* was decided, the Second Circuit has concluded that the right to a speedy trial does not extend through sentencing because "the interests protected by [the] Speedy Trial Clause are not directly relevant to sentencing proceedings." *Ray*, 578 F.3d at 197.

ing analysis, the defendant must demonstrate that the delay "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *See id.* at 651–52, 112 S.Ct. 2686; *see also Barker*, 407 U.S. at 530, 92 S.Ct. 2182 (unless "there is some delay which is presumptively prejudicial," we need not inquire "into the other factors that go into the balance"). This threshold requirement spares courts the task of evaluating speedy trial claims when the defendant's case proceeded with "customary promptness." *See Doggett*, 505 U.S. at 652, 112 S.Ct. 2686.

■ ¶ 36 There is no established time period that automatically constitutes presumptively prejudicial delay. *Moody*, 843 P.2d at 1364. Instead, the "length of the delay which is presumptively prejudicial," thus triggering further inquiry into the *Barker* factors, "will vary with the particular features of each case." *Id.* (quoting *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir.1991)). That said, the Supreme Court has noted that courts generally have found delays presumptively prejudicial at least as they approach one year. *Doggett*, 505 U.S. at 652 n. 1, 112 S.Ct. 2686.

¶ 37 The court of appeals concluded that the sentencing delay was not presumptively prejudicial because it was "substantially less than one year." But it then determined that further inquiry into the *Barker* factors was warranted because the sentencing delay resulted in actual prejudice—that is, the imposition of a sentence longer than what was possible at the originally scheduled sentencing date.

■ ¶ 38 The parties dispute whether a finding of actual prejudice can satisfy the presumptive prejudice threshold. The Supreme Court has stated that presumptive prejudice "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652 n. 1, 112 S.Ct. 2686. In other words, the focus is solely on the delay, not on any prejudice

that may have stemmed from it. *See id.* We thus reject the court of appeals' conclusion that a finding of actual prejudice can satisfy the presumptive prejudice inquiry.[6]

¶ 39 Rather, like the court of appeals, we conclude that the six-month and seven-day sentencing delay was not presumptively prejudicial because it was substantially less than one year. *See id.*; *cf. Moody*, 843 P.2d at 1364 (eight-year delay was "sufficiently lengthy to warrant an inquiry into the other three factors"). In other words, the defendant's sentencing proceeded with "customary promptness." But, unlike the court of appeals, we further conclude that the defendant's failure to demonstrate presumptive prejudice means that his claim fails without having to inquire further into the *Barker* factors.

¶ 40 The trial court's sentencing delay thus did not violate the defendant's claimed constitutional right to speedy sentencing.

## IV. Conclusion

¶ 41 We hold that the six-month and seven-day sentencing delay was not "unreasonable" under Crim. P. 32(b) because the trial court imposed the delay for a legally justifiable reason, namely, to further the General Assembly's intent to require trial courts to sentence recidivist offenders, like the defendant, within an aggravated range. We reject the defendant's constitutional claim because the sentencing delay was not presumptively prejudicial.

¶ 42 We thus reverse the court of appeals and remand with directions to return the case to the trial court to reinstate the defendant's twelve-year sentence.

---

**6.** As we see it, the defendant argues that he suffered prejudice because the trial court imposed a sentence within legislatively mandated limits. This is not the type of prejudice that the speedy trial clauses seek to prevent. We thus conclude that the defendant has failed to establish actual prejudice.