24CA0734 Peo v Gillmore 12-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0734
City and County of Denver District Court No. 23CR726
Honorable A. Bruce Jones, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kevin P. Gillmore,

Defendant-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

---

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Reppucci Law Firm, P.C., Jonathan D. Reppucci, Denver, Colorado, for
Defendant-Appellant

Katherine Houston, Lakewood, Colorado, for Amicus Curiae Rocky Mountain
Victim Law Center

¶ 1     Defendant, Kevin P. Gillmore, appeals the district court's restitution order.  We affirm.

## I.     Background

¶ 2     The prosecution accused Gillmore of sexually assaulting the victim, with whom he was in a relationship, over a period of several months.  The parties resolved the case through a plea agreement.  Gillmore pleaded guilty to second degree assault and attempt to commit sexual assault.  *See* §§ 18-3-203(l)(g), 18-3-402(l)(b), 18-2-101, C.R.S. 2025.

¶ 3     The district court sentenced Gillmore to eight years imprisonment followed by eight years of sex offender intensive supervised probation.  At the sentencing hearing, the court gave the prosecution forty-nine days to "submit restitution."

¶ 4     The prosecution filed a motion for restitution one business day after the forty-nine-day deadline, together with a motion to accept its untimely restitution request.  The court accepted the restitution motion and later held a restitution hearing.  After the hearing, the court ordered Gillmore to pay $136,220.17 in restitution.  Gillmore now appeals.

## II.     Analysis

¶ 5     Gillmore claims that the district court violated the restitution statute, section 18-1.3-603, C.R.S. 2023,[1] because the court (1) did not comply with the statute's requirements at sentencing and (2) abused its discretion by accepting the prosecution's untimely restitution motion.

### A.     Applicable Law and Standard of Review

¶ 6     A court may correct an illegal sentence "that was not authorized by law or that was imposed without jurisdiction at any time."  Crim. P. 35(a).  An illegal sentence "not authorized by law" is a sentence that "fails to comply *in full* with statutory requirements." *Tennyson v. People*, 2025 CO 31, ¶ 25.  And an illegal sentence "imposed without jurisdiction" refers to a court's "power to entertain and to render a judgment on a particular claim."  *Id.* at ¶ 27 (quoting *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 21).

---

[1] Effective after Gillmore's sentencing, the General Assembly amended section 18-1.3-603(1)(b), (2)(a), C.R.S. 2025, revising certain statutory deadlines.  *See* Ch. 307, sec. 1, § 18-1.3-603(1)(b), (2)(a), 2025 Colo. Sess. Laws 1606-07.  For our purposes, we refer to the statute in effect at the time of Gillmore's sentencing, section 18-1.3-603, C.R.S. 2023.

¶ 7    Rule 35(a) also provides that a court "may correct a sentence imposed in an illegal manner," subject to certain deadlines not relevant here.  A court imposes a sentence in an illegal manner when the court "ignores essential procedural rights or statutory considerations in forming the sentence."  *Tennyson*, ¶ 29 (quoting 15 Robert J. Dieter & Nancy J. Lichtenstein, *Colorado Practice Series, Criminal Practice and Procedure*, § 21.10 n.10 (2d ed. 2004)).  A challenge to "the timeliness of the determination of the amount of restitution[] is an illegal manner claim, not an illegal sentence claim."  *Id.* at ¶ 45.

¶ 8    A Rule 35(a) claim has no preservation requirements, even for a direct appeal.  *See People v. Martinez Rubier*, 2024 COA 67, ¶ 23 (no preservation requirements for either an illegal sentence or illegal manner claim); *Fransua v. People*, 2019 CO 96, ¶ 13 ("It makes no sense to require preservation of a claim on direct appeal when an identical claim could be raised without preservation after the conclusion of the direct appeal.")

¶ 9    We review de novo the legality of a sentence and questions of statutory or procedural interpretation.  *Tennyson*, ¶ 23; *Snow v.*

*People*, 2025 CO 32, ¶¶ 17-18. We also review de novo questions of waiver. *Martinez Rubier*, ¶ 30.

¶ 10 We review a district court's decision to modify its own deadline for an abuse of discretion. *See People v. Johnson*, 2013 COA 122, ¶¶ 39-41; *People v. Sandoval-Candelaria*, 2014 CO 21, ¶ 26 ("[T]rial courts have broad discretion to manage their dockets."). A district court abuses its discretion when it misconstrues or misapplies the law or when its decision is manifestly arbitrary, unreasonable, or unfair. *People v. Knapp*, 2020 COA 107, ¶ 68.

## B. The Restitution Statute

¶ 11 District courts are required to include "consideration of restitution" in every order of conviction by (1) fixing a specific amount of restitution; (2) ordering that the defendant is obligated to pay restitution but reserving the question of how much restitution is due for up to ninety-one days; (3) fixing restitution and requiring the defendant to pay certain future costs; or (4) making a specific finding that no victim of the crime suffered a financial loss and thus assessing no restitution. § 18-1.3-603(1); *see People v. Weeks*, 2021 CO 75, ¶ 29.

¶ 12    An order reserving the question of how much restitution is due, § 18-1.3-603(1)(b), requires that the order of conviction assign restitution *liability* at sentencing, even though the court defers determining the *amount of restitution, Snow*, ¶ 12 (noting a "court may enter a finding of restitution liability at sentencing while postponing the determination of the amount of restitution"); *id.* at ¶ 12 n.4 (distinguishing between restitution liability and amount). In other words, section 18-1.3-603(1) does not authorize a court to reserve the issue of restitution in its entirety at sentencing. *Snow*, ¶ 22.

¶ 13    The prosecution also has obligations under the statute. Section 18-1.3-603(2)(a) requires the prosecutor to (1) move for restitution before or during the sentencing hearing; and (2) present the court with information for determining the amount of restitution before the judgment of conviction, if the information is then available. *Weeks*, ¶ 30. If the information isn't then available, the prosecutor may submit the information within ninety-one days. § 18-1.3-603(1)(b), (2)(a).

### C. Restitution Liability Was Imposed at Sentencing

¶ 14    Gillmore contends that the district court failed to comply with section 18-1.3-603 because, at sentencing, the prosecution did not move for restitution, and the court reserved ruling on restitution in its entirety. Consequently, the court's failure to comply with the statute, asserts Gillmore, meant that it had no power to order restitution after sentencing, and thus, the restitution order must be vacated. We are not persuaded.

### 1. Additional Facts

¶ 15    Gillmore submitted to the district court a request to plead guilty along with the plea agreement (collectively, the plea documents). In the plea documents, Gillmore affirmed, "I know that I must pay restitution." The plea documents further stated that Gillmore "agree[d] to pay restitution for all charged counts, including counts dismissed as part of this plea resolution," although they also stipulated that "[t]he People [r]eserve[d] [r]estitution."

¶ 16    The prosecutor told the district court at the plea hearing that she was "reserving restitution." The court then ruled that "[r]estitution [wa]s being reserved."

¶ 17     At the sentencing hearing, defense counsel acknowledged having received an initial proposed amount of restitution from the prosecutor for approximately $46,000. Defense counsel said that most of that amount involved the victim's future psychological treatment — which, defense counsel conceded, "I'm sure [the victim] does need." Defense counsel then argued, "But, honestly, it's going to be difficult for [Gillmore] to make any payments at all if he's in prison." Accordingly, defense counsel asked the court to sentence Gillmore to probation.

¶ 18     For her part, the prosecutor contended that she had a "good-faith basis for reserving restitution" because, "[a]s alluded to by the defense, there is a significant amount of restitution that will be sought." The prosecutor elaborated that earlier in the week she had received forty pages of documentation and receipts from the victim for determining the restitution amount, but the prosecutor and her co-counsel had not yet been able to go through those documents. The prosecutor concluded, "[T]o the extent it would be appropriate for a restitution ask of this nature, . . . we are requesting that the [c]ourt reserve."

¶ 19    In its oral sentencing order, the court ordered the prosecution to submit the amount of restitution sought and advised Gillmore of the following:

> The [prosecution] [is] given [forty-nine] days to submit restitution.  Given the amounts that were being discussed, if the amounts sought are in that vicinity, I am sure that the defense will request a hearing and they are entitled to a hearing.  For that reason, given the amounts that are being suggested, if I could see it sooner than [forty-nine] days, I would very much appreciate that.
>
> Confer with counsel, who can confer with [Gillmore].  It may be that the amount that is ultimately sought is something that he finds agreeable. . . .  I'll rephrase that, . . . that he will agree to.
>
> But [Gillmore], if you do not agree to the amount of restitution that's being sought, you have the right to request a hearing and we will have a hearing at which I will hear witnesses and I will hear testimony and I will see exhibits and I will make a determination as to the appropriate amount of restitution.

The mittimus contained no information about restitution.[2]

---

[2] The district court has since amended the mittimus to reflect the court's ultimate restitution order.  *See People v. Weeks*, 2021 CO 75, ¶ 44 (district courts must update mittimuses to reflect restitution, as appropriate).

8

## 2. The Prosecutor Properly Moved for Restitution

¶ 20    Gillmore contends that, even though the prosecutor had some information about the restitution amount at the time of sentencing, she didn't move for restitution at the hearing as required by section 18-1.3-603(2)(a).[3]

¶ 21    However, before sentencing, Gillmore had already affirmed in his plea documents that he "kn[e]w that [he] must pay restitution" and had "agree[d] to pay restitution for all charged counts." And the court confirmed on the record that Gillmore understood the

---

[3] Shortly before oral argument, Gillmore's counsel filed a "Citation of Supplemental Authorities" referencing an unpublished opinion from a division of this court, which he asserts supports this argument. And after oral argument, counsel filed a "Second Citation of Supplemental Authorities" that similarly cited a second unpublished opinion from a division of this court. However, a notice of supplemental authority is only appropriate to alert the court to "pertinent and significant new authority." C.A.R. 28(i). Only cases designated for official publication are precedential, C.A.R. 35(e), and this court does not permit citation of opinions not selected for publication other than for reasons not applicable here. Accordingly, we do not consider the notices of supplemental authorities further.

terms of his plea documents and had entered his plea freely, knowingly, and intentionally.[4]

¶ 22 It is true that at the plea hearing the court ordered, echoing the words of the prosecutor's request, that restitution was "being reserved." But based on the affirmations contained in Gillmore's plea documents, we perceive that the court was only reserving the *amount* of restitution and that it implicitly imposed restitution *liability* on Gillmore, as the plea agreement contemplated.

¶ 23 Indeed, the record supports the conclusion that, at sentencing, the parties understood that the court would hold Gillmore liable for restitution. Defense counsel demonstrated this understanding by advocating for a probationary sentence so that

---

[4] Gillmore also claims that the court didn't establish restitution liability at the sentencing hearing because the court's findings of fact issued after the plea hearing indicated that the court wasn't bound by the parties' representations, thus implying that restitution needed to be stated on the record. But Gillmore raised this issue for the first time in his reply brief, so we will not consider it. This is so even though we permitted the People to file a surreply because the surreply was solely directed at responding to Gillmore's discussion in his reply brief about *Snow v. People*, 2025 CO 32 (which was announced after the answer brief was filed). *See People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990) (when prosecution did not have a chance to brief an issue first raised in reply brief, supreme court would not address it), *abrogated in part on other grounds by*, *Rojas v. People*, 2022 CO 8.

10

Gillmore could pay "a restitution *amount . . .* of some $46,000," which largely entailed treatments that defense counsel acknowledged the victim "does need." (Emphasis added.) Such an argument about what type of sentence would enable Gillmore to pay for restitution is necessarily premised on his being liable for restitution to begin with. Further, defense counsel raised no objections with the district court — either at sentencing or at the later restitution hearing — to Gillmore having an underlying obligation to pay restitution. Indeed, his liability for *some* amount of restitution was a foregone conclusion.

¶ 24    Moreover, while it's true that the prosecutor requested at sentencing "that the [c]ourt reserve" restitution, she made her request based on the review required for the "significant *amount* of restitution that [would] be sought." (Emphasis added.) It would make little sense for the prosecutor to request more time to determine the amount of restitution unless her request implicitly included asking the court to hold Gillmore liable for restitution — as the parties understood he would be — and thus invoking section 18-1.3-603(2)(a). Even so, Gillmore contends, citing *Weeks*, ¶ 30, that the prosecutor needed to exercise diligent efforts to

obtain the restitution information before sentencing.[5]  While Gillmore doesn't dispute that the prosecution obtained forty pages of documents before sentencing, he does claim that the prosecutor failed to exercise diligence because she didn't obtain the documentation sooner.

¶ 25　　We disagree with the premise that the prosecutor's obligation under *Weeks* — to show that the information supporting the prosecution's restitution request "isn't yet available" at sentencing — entails the prosecutor obtaining the information by some arbitrary date before the sentencing hearing.  *Weeks*, ¶ 6.  Besides, both parties acknowledged at the sentencing hearing that the prosecutor had grounds to seek a significant amount of restitution; that the prosecutor needed more time to review the forty pages of documents, to which defense counsel did not object; and that the prosecutor had provided the defense with an initial restitution amount before sentencing.  The record demonstrates, then, that the prosecutor had sufficiently endeavored to obtain the

---

[5] The Colorado Supreme Court recently granted certiorari in a case holding that the prosecution must exercise diligent efforts to obtain the restitution information before the judgment of conviction.  *See People v. Brassill*, 2024 COA 19 (*cert. granted in part* Aug. 4, 2025).

information before sentencing and had reasonable grounds explaining why the exact amount of restitution was not yet available. *See* § 18-1.3-603(2)(a); *Weeks*, ¶ 44.

### 3. The Court Did Order That Gillmore Was Liable for Restitution

¶ 26    Gillmore contends that because the district court ordered the prosecution to submit the restitution information within forty-nine days, it reserved ruling on the issue of restitution in its entirety in violation of the statute.

¶ 27    To be sure, it would have been a better practice for the district court to have explicitly ordered at sentencing that Gillmore was liable for restitution with the amount to be determined later. *See* § 18-1.3-603(1)(b). Likewise, it would be a better practice for the prosecutor to not ask to "reserve restitution," particularly nearly three years after the supreme court had issued *Weeks*.

¶ 28    Nonetheless, the court's order addressed restitution in terms of the "[g]iven . . . *amounts*" and "*amounts* sought." (Emphasis added.) And the court tailored its order in anticipation of Gillmore either agreeing to the restitution "*amount* that is ultimately sought" or "not agree[ing] to the *amount* of restitution" and requesting a

hearing so the court could "make a determination as to the appropriate *amount* of restitution." (Emphasis added.) Viewing these rulings in context with both (1) Gillmore's acknowledgements in his plea documents that he "must pay restitution" and would "pay restitution for all charged counts" and (2) the parties' exclusive focus at sentencing on the amount of restitution to be determined, we infer that the district court's order deferred only the determination of the amount of restitution, and not Gillmore's liability for restitution in its entirety, in accordance with section 18-1.3-603(1)(b) and the parties' understanding.

¶ 29 Consequently, we disagree with Gillmore's argument that this case is analogous to *Snow*. In that case, the supreme court held that there was no basis to infer restitution liability from the district's court order that "reserve[d] restitution for [sixty] days." *Snow*, ¶ 7. Unlike the record here, the supreme court determined that the record in *Snow* was "barren of an explicit or implicit finding of restitution liability either before or during the sentencing hearing." *Id.* at ¶ 29. This is so because, as distinguishable from Gillmore's case, in *Snow*, the defendant's plea agreement didn't mention restitution at all, and the prosecution gave no indication it

intended to seek restitution beyond the singular event of asking the district court to "reserve restitution at this point in time." *Id.* at ¶¶ 6-7.

¶ 30     Gillmore's case is more analogous to *Tennyson*, where the record did support an inference of restitution liability. In *Tennyson*, after the defendant stipulated in a plea agreement that he was liable for restitution, at sentencing, the district court granted the prosecution more time to determine "*what restitution is due and owing.*" *Tennyson*, ¶ 10. Accordingly, the supreme court inferred from "the terms of the plea agreement and the exchange between the court and the prosecution at the sentencing hearing" that the district court had found the defendant liable for restitution. *Id.*

¶ 31     The same is true here. Following Gillmore's stipulation in the plea agreement that he would pay restitution, the district court ordered that the prosecution had "[forty-nine] days to submit restitution" because of the amounts sought and the defense's anticipated request for a hearing. Accordingly, from the plea agreement, the parties' exchanges over the amount of restitution, and the court's order discussing the restitution amount, we infer

that, at the sentencing hearing, the court found Gillmore liable for restitution with the amount of restitution to be determined later.

### D. Untimely Motion for Restitution

¶ 32 Gillmore contends that the district court abused its discretion when it accepted the prosecution's untimely motion for restitution after sentencing. We disagree.

### 1. Additional Facts

¶ 33 As discussed, the district court ordered the prosecution to "submit restitution" within forty-nine days of sentencing. The forty-ninth day fell on a Friday. The following Monday, the prosecution filed a motion for restitution that specified the amount of restitution it sought.

¶ 34 The prosecution simultaneously filed a motion requesting that the court accept the motion for restitution as timely. The request asserted that the prosecution had received updated documentation from the victim the day before the forty-nine-day deadline, but on the day of the deadline, the two prosecutors were unable to review the documentation due to scheduling conflicts.

¶ 35 The district court granted the request, accepted the untimely restitution motion, and ordered the parties to set a restitution

hearing.  The hearing was scheduled for roughly a month later, before section 18-1.3-603(1)(b)'s ninety-one-day deadline.  By all indications, defense counsel participated in the scheduling process, and she attended the hearing without objection.

¶ 36    At the restitution hearing, the court found good cause to extend the statutory deadline beyond ninety-one days to prepare a written order.  *See id.*  The court issued its restitution order after the ninety-one-day statutory deadline but before the extended deadline.[6]

### 2.    Gillmore Properly Raised and Didn't Waive This Issue

¶ 37    As an initial matter, we disagree with the People's claim that Gillmore's contention isn't cognizable under Rule 35(a) because Gillmore doesn't contest the court's good cause finding or the issuance of its restitution order beyond the statutory deadline.  Gillmore's contention implicates the procedures the court employed to determine the amount of restitution.  While a challenge to the

---

[6] To the extent Gillmore implies the district court's acceptance of the late filing caused the court to delay its final order, such an argument is not developed, and we will not address it.  *See People v. Perez,* 2024 COA 94, ¶ 51.

entry of an untimely restitution order, in violation of the statutory deadline, would certainly constitute an illegal manner claim, divisions of this court have also held that an illegal manner claim arose when the defendant argued "that the [district] court did not comply with one or more of the statutory and procedural considerations governing restitution hearings." *People v. Bowerman*, 258 P.3d 314, 317 (Colo. App. 2010). And while not grounded on a statutory deadline, Gillmore argues that the court did not give him the procedural protections of the schedule that it had set for the case. *See Tennyson*, ¶ 29 ("Sentences imposed in an illegal manner include, but are not limited to, those where the court fails to adhere to statutory procedural requirements . . . or where the manner of imposing the sentence results in the denial of procedural due process." (citation omitted)). Regardless, because we conclude below that the district court did not abuse its discretion, we need not decide which standard of reversal would apply if it had erred. *See Hagos v. People*, 2012 CO 63, ¶¶ 9-14.

¶ 38      We are also unpersuaded by the People's assertion that Gillmore waived this issue by not objecting after any of the court's rulings. Waiver requires an intentional relinquishment of a known

18

right.  *People v. Garcia*, 2024 CO 41M, ¶ 28.  It is true that waiver can be implied "when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion."  *Babcock v. People*, 2025 CO 26, ¶ 29 (quoting *Forgette v. People*, 2023 CO 4, ¶ 28).  But Gillmore's mere failure to object while complying with the district court's orders to schedule and attend the restitution hearing — all done without Gillmore making any specific scheduling requests — did not manifest his intent to relinquish the right to have the court comply with the deadlines it had imposed.  *Cf. id.* at ¶ 30 (holding that defendant manifested intent to relinquish right to statutory deadline by requesting restitution hearing be set outside deadline).  And as Gillmore points out, the court granted the motion to accept the untimely restitution motion only hours after the prosecution filed it.

### 3. The Court Accepted the Untimely Motion by Exercising Its Inherent Authority

¶ 39     Gillmore contends that the district court violated Crim. P. 45 by accepting the prosecution's untimely restitution motion without first finding excusable neglect.

¶ 40    That rule states that, for any act that "is required or allowed to be performed at or within a specified time," the court in its discretion may, upon a motion, "permit the act to be done after expiration of the specified period if the failure to act on time was the result of excusable neglect." Crim. P. 45(b)(2). Here, the forty-nine-day deadline stemmed from the district court's order at sentencing, not from a statute or rule. Indeed, the prosecution's motion fell within the ninety-one-day deadline set by section 18-1.3-603(2)(a). *See Martinez Rubier*, ¶ 46 (holding that a district court may deviate from restitution timetable "so long as the court ultimately enters its restitution order within the ninety-one-day deadline set forth in section 18-1.3-603(1)(b)"). And while Gillmore cites Rule 45(b)(2) for the proposition that the district court needed to find excusable neglect before it accepted the untimely filing, he does not cite any statute or rule as the basis for the underlying forty-nine-day deadline.

¶ 41    To the contrary, the district court issued the scheduling order under its own inherent authority. *See People v. Silva-Jaquez*, 2025 CO 11, ¶ 37 ("A trial court may issue scheduling orders pursuant to its inherent case-management authority."). Because the court set

the deadline under its own inherent authority and not by a time specified by statute or procedural rule, no excusable neglect finding was required. *See People v. Owens*, 2014 CO 58M, ¶ 16 ("[I]t is undisputed that district courts have the inherent authority to manage their dockets . . . as they deem necessary to avoid delay-causing surprise at evidentiary hearings on post-conviction claims . . . ."); *see also People v. Jasper*, 17 P.3d 807, 809 (Colo. 2001) (concluding that a party must establish *good cause* when it misses a plea cutoff bargain deadline the court has established under its inherent authority).

¶ 42    Consequently, the district court did not abuse its discretion by allowing a single business-day extension to its deadline for the prosecution to submit its restitution motion because (1) the prosecution provided good cause for the delay; (2) Gillmore had already received a proposed restitution amount at sentencing that made him aware of the prosecution's intent to file the motion; and (3) Gillmore still had a month to prepare for the restitution hearing after receiving the restitution motion. Therefore, we don't perceive that the court's acceptance of the untimely motion was manifestly arbitrary, unreasonable, or unfair. *See Knapp*, ¶ 68; *see also*

*Brassill*, ¶ 61 ("[T]he violation of a scheduling order does not deprive the court of the authority to resolve restitution.").

## III.   Disposition

¶ 43     The restitution order is affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.